UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON R. LABER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| | ) 3:17-cv-00542 (KAD) |
| v. | ) |
| | ) **April 12, 2019** |
| LONG VIEW R.V., INC. d/b/a | ) |
| LONG VIEW RV SUPERSTORE, | ) |
| THOR MOTOR COACH, INC. | ) |
| and ALLY BANK, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# Reply Memorandum of Law
# in Further Support of Defendant Long
# View R.V., Inc.'s Motion for Summary Judgment

## Table of Contents

**Page(s)**

Table of Authorities .................................................................................................. ii

1.   Laber Misstates the Standard for Establishing
      a Breach of the Implied Warranty of Merchantability................................................. 1

2.   Plaintiff Admits the Miramar Was Safe and Drivable ................................................. 4

3.   Laber Fails to Offer Admissible Evidence to Support His Concerns .......................... 5

4.   Laber Does Not Raise a Material Issue of Fact........................................................... 8

5.   Laber Cannot Use an Unpled Revocation Claim to Prolong This Action...................10

Conclusion ...................................................................................................................10

# Table of Authorities

Pages(s)

## Cases

*Alin v. Am. Honda Motor Co.*, 2010 WL 1372308 (D.N.J. Mar. 31, 2010)............................. 2

*Bailey v. Monaco Coach Corp.*,
    350 F. Supp. 2d 1036 (N.D. Ga. 2004), *aff'd*, 168 Fed. Appx. 893 (11th Cir. 2006)....6, 7

*Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499 (Va. 1999) ....................................... 3

*Bourke v. MAN Engines & Components, Inc.*, 303 F. Supp. 3d 227 (D. Conn. 2018)................. 7

*Cavanaugh v. Subaru of Am., Inc.*,
    2017 WL 2293124 (Conn. Super. Ct. May 4, 2017)......................................... 1, 2, 3, 5

*Davenport v. Thor Motor Coach, Inc.*, 2015 WL 13021664 (M.D. Fla. Aug. 6, 2015) ..........6, 10

*Gen. Motors Corp. v. Martin*, 1997 WL 805137 (Conn. Super. Ct. Dec. 16, 1997) ................. 7

*Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313 (W.D.N.Y. 2013)....................................... 2

*In re Gen. Motors Corp. "Piston Slap" Prods. Liab. Litig.*,
    2005 WL 1924331 (W.D. Okla. Aug. 8, 2005) ............................................................. 3

*Krack v. Action Motors Corp.*, 87 Conn. App. 687 (2005) ....................................................... 3

*Kroll v. Mazda Motor of Am., Inc.*, 2000 WL 486834 (Conn. Super. Ct. Mar. 28, 2000) .......... 7

*Mathews v. REV Recreation Group*, 2018 WL 1586254 (N.D. Ind. Apr. 2, 2018)................... 9

*Pearson v. Winnebago Indus., Inc.*, 2016 WL 6893937 (M.D. Fla. Nov. 23, 2016)................... 9

*Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908 (D.N.J. June 3, 2008) ................................. 2

*Stream v. Sportscar Salon, Ltd.*, 91 Misc. 2d 99 (N.Y. Civ. Ct. Queens County 1977) .............. 7

*Sun Hill Indus., Inc. v. Kraftsman Group, Inc.*, 27 Conn. App. 688 (1992)................................. 6

*Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ...................2, 5

*Treadaway v. Damon Corp.*, 2004 WL 3372010 (E.D. Mich. Sept. 30, 2004).................passim

*Whitehead v. John Bleakley RV Ctr., Inc.*,
    2010 WL 925091 (N.D. Ga. Mar. 8, 2010)................................................................. 6

**Page(s)**

**Statute**

Conn. Gen. Stat. § 42a-2-711(1) ........................................................................10

Defendant Long View R.V., Inc. ("Long View") submits this Reply Memorandum of Law in further support of its motion for summary judgment dismissing the Complaint (Doc. # 1) of plaintiff Jason R. Laber.

The question for the Court is straightforward: has Laber offered evidence, as opposed to a "naked concern," of a slide-out defect in Laber's Miramar motor home (the "Miramar") at the time of sale that rendered the vehicle unsafe or undrivable? Pl.'s Mem. Opp'n Mot. for Summ. J. ("Pl.'s Summ. J. Mem.," Doc. # 114) at 16. He has not. He admits the Miramar's slide-out drift did not render the Miramar unsafe or undrivable, and his concern that the drift will worsen is unsupported and speculative. As a result, Long View is entitled to summary judgment.

### 1. Laber Misstates the Standard for Establishing a Breach of the Implied Warranty of Merchantability

Laber admits the implied warranty of merchantability sets only "minimum standards" for vehicles. Pl.'s Summ. J. Mem. at 12. Yet he improperly attempts to expand these minimum standards into something far broader, which would render a vehicle unmerchantable if it had any defect that reduced its value, dissuaded a buyer from purchasing it, or interfered with what he calls "worry-free use"—a subjective, undefined term. *Id.* at 17; *see id.* at 14, 16. He also claims, erroneously, that he may prove unmerchantability without relying on industry standards. *See* Pl.'s Mem. Opp'n Mot. to Preclude (Doc. # 113) at 9 (asserting, without support, that "there is not any industry standard with respect to investigating slide-out drift").

Thus, Laber asks the Court to disregard extensive precedent holding that the merchantability standard "is an objective one, based upon industry standards and not a plaintiff's personal beliefs," *Cavanaugh v. Subaru of Am., Inc.*, 2017 WL 2293124, at *4

(Conn. Super. Ct. May 4, 2017), "does not guarantee that the product will fill a buyer's every expectation," *id.* (quoting *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011)), and "is breached only when a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner," *id.* (quoting *Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008)). Thus, a safe and drivable vehicle is merchantable even if it has defects that would reduce its value, discourage a forewarned customer, or disappoint an owner. *See, e.g.*, *Treadaway v. Damon Corp.*, 2004 WL 3372010, at *7 (E.D. Mich. Sept. 30, 2004) (granting summary judgment to defendants where the plaintiff's motor home had a misaligned slide-out); *Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *12 (D.N.J. Mar. 31, 2010) (dismissing complaint alleging a defective air conditioning system because such a defect, "while inconvenient, does not render a vehicle unfit to provide transportation to its owner").

Laber offers no sound reason for the Court to disregard this "weight of authority, from courts across the country." *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (quoting *Sheris*, 2008 WL 2354908, at *6). His observation that some of Long View's cited cases involved class actions or were directed against manufacturers is unpersuasive, as each case considered the criteria for establishing unmerchantability and found that the claimed defects did not meet them. Pl.'s Summ. J. Mem. at 15-16; *see, e.g.*, *Haag*, 969 F. Supp. 2d at 317 (concluding that even if the plaintiff had alleged sufficient privity to plead an implied warranty of merchantability claim against a manufacturer, she had not alleged a defect that rendered her car unfit to drive).

In addressing Connecticut law, Laber ignores the recent *Cavanaugh* decision—which follows this "weight of authority"—and relies on *Krack v. Action Motors Corp.*, 87 Conn. App. 687 (2005) (*cited in* Pl.'s Summ. J. Mem. at 13). But that decision did not address the standard for merchantability. *See Krack*, 87 Conn. App. at 694 (finding that a seller's knowledge of a defect is not an element of an implied warranty claim). Further, the trial court in *Krack* found a breach of implied warranty based on the sale of a salvaged vehicle as a non-salvaged vehicle. *See id.* at 688. These facts are not relevant to a mechanical issue such as slide-out misalignment, which does not impair safety or drivability.

In the only case Laber cites to argue that a vehicle may be unmerchantable if "a significant segment of the buying public would object to buying this particular model," Pl.'s Summ. J. Mem. at 14, the court denied a motion to dismiss where the plaintiff alleged a defect that "damages the engine," and thus could result in a lack of drivability, *In re Gen. Motors Corp. "Piston Slap" Prods. Liab. Litig.* ("*GMC*"), 2005 WL 1924331, at *1-2 (W.D. Okla. Aug. 8, 2005) (*cited in* Pl.'s Summ. J. Mem. at 14). Further, *GMC* and Laber rely on a decision, *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499 (Va. 1999) (*cited in* Pl.'s Summ. J. Mem. at 14), that underscores the significance of Laber's failure to offer proof of industry standards governing slide-outs. The *Bayliner Marine* court noted that "to prove that a product is not merchantable, the complaining party must first establish the standard of merchantability in the trade," and found that the plaintiff had failed to establish that standard or prove a violation of it. *Id.* at 503. Thus, even if the Court adopts Laber's "significant segment of the buying public" test, it should still grant summary judgment to Long View because Laber has not offered evidence of the

standard of merchantability for slide-outs, or that the Miramar's slide-out violated that standard.

Finally, Laber suggests that, rather than the "safe and drivable" standard applicable to vehicles, the Miramar should be held to a different, unidentified standard because it has "functions that extend beyond basic transportation, i.e., mobile home living." Pl.'s Summ. J. Mem. at 17. But Laber has not shown a defect in the Miramar at the time of sale that interfered with his use of it in any way, either as a vehicle or for mobile living. *See Treadaway*, 2004 WL 3372010, at *7 ("Without evidence to show that the approximately one-inch misalignment of the slide-out impairs the functioning of the motor home, Plaintiff cannot succeed on his claim for breach of an implied warranty of merchantability."). To the contrary, Laber used the Miramar extensively and never encountered safety or drivability issues.

### 2. Plaintiff Admits the Miramar Was Safe and Drivable

In his Opposition, Laber confirms that the key facts on this motion are undisputed. Laber drove the Miramar, often with several passengers, for thousands of miles. Def.'s Local R. 56(a)(1) Stmt. ("Def.'s Stmt.," Doc. # 107-2) ¶¶ 10-18; Pl.'s Local R. 56(a)(2) Stmt. ("Pl.'s Stmt.," Doc. # 114-1) ¶¶ 10-18. Laber did not believe that the slide-out drift he observed made the Miramar unsafe to drive. Instead, he feared that the size of the drift would increase and thus create a dangerous condition. Def.'s Stmt. ¶ 29; Pl.'s Stmt. ¶ 29; *see also* Laber 2/28/19 Aff. (Doc. # 114-3) ¶ 42 ("[A]lthough the slide-out has not drifted more than two inches (to my knowledge), I fear that the improperly functioning motor brakes will not prevent the slide-out from extending the full distance during travel . . . ."), ¶ 55 ("I fear that the super slide-out could extend by a considerably

4

greater distance . . . ."). Given these undisputed facts, it is immaterial that Laber, his wife, or his friend became "concerned" about the Miramar being unsafe. Pl.'s Summ. J. Mem. at 9. None of these affiants observed a dangerous condition, and Laber fails to offer evidence establishing that their concerns about the Miramar were justified.

Further, Laber never saw water enter the Miramar and did not believe the Miramar suffered from water entry. He was only concerned that that water intrusion would damage the Miramar in two or three years. Def.'s Stmt. ¶¶ 30-31; Pl.'s Stmt. ¶¶ 30-31. As a matter of law, Laber's concern about future damage to the Miramar cannot establish a breach of the implied warranty of merchantability. *See Treadaway*, 2004 WL 3372010, at \*7 (finding that the plaintiff's testimony "reveals that he has not experienced any air leaks, water leaks, or other problems with the seal around the rear slide-out," but "has simply raised concerns about possible problems that may arise in the future"); *see also Szymczak*, 2011 WL 7095432, at \*11 ("Courts . . . have consistently held that an automobile that was driven for years without problems was merchantable at the time of sale."); *Cavanaugh*, 2017 WL 2293124, at \*4 (dismissing implied warranty claim where the plaintiff had driven their vehicles "successfully for at least two years").

### 3. Laber Fails to Offer Admissible Evidence to Support His Concerns

Laber's only evidence that the slide-out drift will increase or allow water intrusion is the opinion of his expert, Thomas Bailey. Long View has shown that Bailey's opinion must be excluded as unqualified and unreliable. Without Bailey's expert opinion, Laber lacks any admissible evidence to support his claim.

Laber argues he does not need expert testimony to prove his case. Pl.'s Summ. J. Mem. at 18. But he fails to address *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1046 (N.D. Ga. 2004), *aff'd*, 168 Fed. Appx. 893 (11th Cir. 2006), which held that in slide-out misalignment cases, plaintiffs must offer expert testimony because jurors are unlikely to be familiar with slide-outs. *Accord Davenport v. Thor Motor Coach, Inc.*, 2015 WL 13021664, at *4-5 (M.D. Fla. Aug. 6, 2015) (finding, where the plaintiffs alleged that their slide-out "is not sealed at the corners, allowing for light, insects and possibly moisture to enter," that the average juror would "not likely be able to determine what constitutes a defect in the slide-outs absent expert testimony," and "likely has little knowledge of or experience pertaining to RV industry standards, value determination, appraisal or the mechanics associated with an RV"); *Whitehead v. John Bleakley RV Ctr., Inc.*, 2010 WL 925091, at *2 (N.D. Ga. Mar. 8, 2010) (finding that, absent expert testimony, the plaintiff was "not qualified to say [that a] small gap" caused by an inability to "fully retract" slide-outs was a defect violating an express warranty). In fact, by presenting a "thought experiment" based on unproven assumptions and arbitrary beliefs about how a slide-out should function, Laber demonstrates why an expert opinion—based on objective criteria and industry standards—is necessary to sustain his claim. Pl.'s Summ. J. Mem. at 14.[1]

The cases cited by Laber involved observable defects that did not require expertise to understand. *See Sun Hill Indus., Inc. v. Kraftsman Group, Inc.*, 27 Conn. App. 688, 696-

---

[1] There are numerous inaccuracies and distortions in Laber's "thought experiment," which lacks any citation to the record. In particular, not even Bailey concluded that "the slide brakes are not capable of keeping the slide-out in place." Pl.'s Mem. at 14.

97 (1992) (plaintiff did not need an expert to prove cardboard cartons, whose "collapsed and crushed" state "was apparent to any viewer," were unmerchantable); *Kroll v. Mazda Motor of Am., Inc.*, 2000 WL 486834, at *1, 4-5 (Conn. Super. Ct. Mar. 28, 2000) (products liability plaintiff whose car "suddenly and without warning, failed to stop" offered sufficient evidence for a jury to infer a defect); *Stream v. Sportscar Salon, Ltd.*, 91 Misc. 2d 99, 101-02, 105 (N.Y. Civ. Ct. Queens County 1977) (expert was not needed to prove unmerchantability where the plaintiff's car broke down and leaked oil, showing that the car "was not fit for driving") (*all quoted in* Pl.'s Summ. J. Mem. at 19). In contrast, Laber complains of conditions—the slide-out fully extending or allowing water intrusion—that have never occurred. These circumstances do not permit the jury to make an inference of unmerchantability, but instead require expert testimony. *See Bailey*, 350 F. Supp. 2d at 1046.

Laber asserts that Lemon Law arbitrations do not require expert testimony. Pl.'s Summ. J. Mem. at 19-20 (citing *Gen. Motors Corp. v. Martin*, 1997 WL 805137, at *3 (Conn. Super. Ct. Dec. 16, 1997)). This is not a Lemon Law case. Laber selected a federal forum and is subject to the rule that "complex questions outside of the ordinary knowledge and experience of jurors," such as whether a slide-out will fully extend in transit or allow water infiltration in two to three years, require expert testimony to resolve. *Bourke v. MAN Engines & Components, Inc.*, 303 F. Supp. 3d 227, 233 (D. Conn. 2018) (internal quotation marks omitted).

Even if expert testimony were not required, Laber fails to identify any non-expert evidence showing that the slide-out renders the Miramar unsafe or undrivable, and he fails to establish any breach of warranty damages. Regarding his claim that "water will

infiltrate the track mechanism," Pl.'s Summ. J. Mem. at 16, Laber only refers to Shannon Hunter's testimony that the fascia of the "rear bottom" corner of the slide-out was "no longer touching the bulb seal which would indicate that it's no longer sealed to the elements," Hunter Dep. (Ex. C to Miner Aff., Doc. # 114-2) at 28:16-18, 29:11-13; *see* Pl.'s Summ. J. Mem. at 8.[2] Hunter did not testify that this gap would allow water to enter the Miramar, let alone damage it, or that he observed any water infiltration. His equivocal statement about what his observation "would indicate" cannot defeat summary judgment, especially since Hunter did not testify that the Miramar was unsafe or undrivable, and Laber is only concerned about water infiltration occurring in two or three years. Laber even admits Hunter's findings "are not central to the determination of merchantability." Pl.'s Mem. Opp'n Mot. to Preclude at 14.

In short, the record is devoid of evidence that the Miramar is unsafe or undrivable due to a defect existing at the time of sale.

### 4. Laber Does Not Raise a Material Issue of Fact

Laber's factual arguments do not address whether the Miramar was safe and drivable, and are thus red herrings.

Laber's discussion of the Miramar lacking the 3TRAX System at the time of purchase is irrelevant. *See* Pl.'s Summ. J. Mem. at 3-4. Laber does not show any connection between the absence of the 3TRAX System and the slide-out drift, and has abandoned his express warranty and negligent misrepresentation claims regarding the 3TRAX System. *Id.* at 1 n.1.

---

[2] Laber incorrectly states that Hunter testified "that the amount of drift was sufficient to expose the tracks" of the slide-out. Pl.'s Mem. at 8; *see* Hunter Dep. at 28:12-14 ("Q: Was [the drift] far enough for you to be able to see the tracks? A: No.").

Contrary to Laber's argument, Long View does not contend "that the root of the drifting problem is Plaintiff's refusal to utilize slide-locks," or that "Plaintiff acted unreasonably by refusing to use slide-locks." *Id.* at 7-8. Rather, the point is that Laber's refusal to use slide-locks—which Laber admits would serve as a "guarantee" against slide-out drift—is further proof that the slide-out did not pose a safety concern. Def.'s Stmt. ¶ 22; Pl.'s Stmt. ¶ 22. Laber chose not to use slide-locks because the Miramar was safe to drive without them.

Laber attempts to create the appearance of a factual dispute over the Miramar's history of repairs and drifting. *See* Pl.'s Summ. J. Mem. at 4-6. But the existence of the drift, the failure to repair it, and the parties' resulting frustration are not disputed on this motion. The issue is whether Laber has offered enough admissible evidence to allow a jury to find that the Miramar was unmerchantable. *See Treadaway*, 2004 WL 3372010, at *6. He has not. Thus, the presence of the drift after multiple repair attempts is insufficient to raise a material issue of fact. *See id.* at *7 (granting summary judgment to defendants despite the plaintiff's "claims that the slide-out has never been aligned or fixed to his satisfaction despite repeated attempts by Defendants"); *see also Pearson v. Winnebago Indus., Inc.*, 2016 WL 6893937, at *7 (M.D. Fla. Nov. 23, 2016) (granting summary judgment to defendants in express warranty case, noting that "[w]hile Plaintiffs' testimony may be sufficient to establish that the slide-outs are not operating as desired, it is not sufficient to show that the alleged slide-out defects are covered defects under the warranty"); *Mathews v. REV Recreation Group, Inc.*, 2018 WL 1586254, at *5 (N.D. Ind. Apr. 2, 2018) (granting summary judgment to defendant despite the plaintiffs' "understandable" frustration with their need to repeatedly return

9

their motor home for repairs, and their belief that their motor home "was a deeply flawed piece of machinery").

Laber also attempts to complicate the record by claiming the slide-out "has had continuous problems retracting, and it regularly experiences circuit shortages." Pl.'s Summ. J. Mem. at 8. Laber fails to describe these issues in any detail, let alone show they rendered the Miramar unsafe or undrivable. Bailey does not address these issues in his reports, and Laber does not mention them when listing his reasons for revoking acceptance. *See* Laber 2/28/19 Aff. ¶ 59. As a result, they cannot raise an issue of fact.

**5. Laber Cannot Use an Unpled Revocation Claim to Prolong This Action**

Laber concedes that revocation is a statutory claim separate from the implied warranty of merchantability. Pl.'s Summ. J. Mem. at 18 (citing Conn. Gen. Stat. § 42a-2-711(1)). Laber did not plead such a claim. *See Davenport*, 2015 WL 13021664, at *3 (finding, on a motion for summary judgment, that the plaintiffs failed to plead a statutory revocation claim).

Contrary to Laber's argument, Pl.'s Mem. at 18, Long View has shown that even if the Court views the Complaint as stating a distinct revocation claim, such a claim must be dismissed due to Laber's failure to prove impairment of his use of the Miramar. Def.'s Mem. of Law Supp. Mot. for Summ. J. (Doc. # 107-1) at 14 (quoting *Treadaway*, 2004 WL 3372010, at *11).

## Conclusion

The Court should grant summary judgment dismissing the remaining claims in this action as against Long View: Counts One (implied warranty of merchantability), Three (express warranty), and Seven (negligent misrepresentation).

Dated: April 12, 2019

**LECLAIR KORONA COLE LLP**

/s/ Mary Jo S. Korona
Mary Jo S. Korona, Esq. (phv08)
Jeremy M. Sher, Esq. (phv09)
*Attorneys for Defendants*
28 E. Main Street, Suite 1500
Rochester, NY 14614
mkorona@leclairkorona.com
Tel: 585-327-4100
Fax: 585-327-4200

**KROLL MCNAMARA
EVANS & DELEHANTY, LLP**

/s/ Douglas M. Evans
Douglas M. Evans, Esq. (ct04613)
*Attorneys for Defendants
Thor Motor Coach, Inc.
and Long View R.V., Inc.*
65 Memorial Road, Suite 300
West Hartford, CT 06107
devans@kmelaw.com
Tel: 860-561-7070
Fax: 860-561-7075

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, a copy of Defendant Long View R.V., Inc.'s Reply Memorandum of Law in Further Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Mary Jo S. Korona
Mary Jo S. Korona, Esq. (phv08)