UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON R. LABER          )<br>*Plaintiff*,          )<br>                     )<br>v.                   )<br>                     )<br>LONG VIEW R.V., INC.     )<br>*Defendant*.         ) | 3:17-CV-00542 (KAD)<br><br><br><br><br><br>April 16, 2020 |

**MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S EXPERT WITNESS (ECF NO. 108) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 107)**

Kari A. Dooley, United States District Judge

This case arises out of the sale of a 2017 Thor Miramar 34.3 motorhome ("Miramar") by Defendant, Long View R.V., Inc. d/b/a/ Long View RV Superstore ("Long View"), to Plaintiff, Jason Laber ("Laber"), on June 9, 2016. Shortly after purchasing the Miramar, Laber alleges that the Miramar's slide-out, a feature that extends the walls of the motorhome to increase living quarters, was drifting approximately 1.5 inches while driving (the "slide-out defect"). Due to the slide-out defect, among other alleged issues, and failed repair attempts by Long View, Laber revoked acceptance of the Miramar and brought this instant action against Long View for breach of the implied warranty of merchantability (Count One),[1] breach of express warranty (Count Three), and negligent misrepresentation (Count Seven).[2] Discovery is concluded and now pending before the Court is Long View's motion for summary judgment. Long View also filed a motion to preclude the expert testimony of Thomas Bailey, Laber's disclosed expert on both the merchantability of the Miramar as well as the diminished value of the Miramar. For the following

---

[1] Laber argues that an independent claim for revocation is included under Count One. That claim is discussed *infra.*
[2] By this Court's March 23, 2018 Order, Defendants Thor Motor Coach, Inc. and Ally Bank, which financed Laber's purchase of the Miramar, were terminated. (ECF No. 88). The Order also dismissed Counts Two, Four, Five, Six and Eight. Counts One, Three, and Seven as to Defendant Long View are the only remaining counts.

reasons, the motion to preclude the valuation opinion is GRANTED. And accordingly, the motion for summary judgment is GRANTED.

**Background and Allegations**

After purchasing the Miramar on June 9, 2016 and upon noticing the slide-out defect, Laber first brought the Miramar back to Long View for repairs in June 2016. However, in July 2016, Laber observed the slide-out defect had not been fixed. Laber brought the Miramar back to Long View for additional repairs in July 2016 and September 2016 but the slide-out defect was not fixed on either occasion. At that point, Laber agreed to send the Miramar to Thor Motor Coach, Inc. ("Thor"), the manufacturer of the Miramar, in Indiana for repairs. When the Miramar returned to Long View from Thor in January 2017, the slide-out defect was still not fixed. Eventually, in February 2017, while the Miramar was again in Long View's possession, Laber served notice on Long View revoking his acceptance of the Miramar.

While in his possession, Laber took the Miramar on several trips to and from his home in Centerville, Massachusetts. For example, Laber took his family on eight camping trips throughout Massachusetts. In July 2016, Laber, accompanied by his wife and three other couples, went to a concert at the Xfinity Center in Mansfield, Massachusetts. Then, in November 2016, Laber and a group of friends went to a Patriots game in Foxborough, Massachusetts. Laber also took various other trips for both leisure and repairs. When Laber last drove the Miramar in December 2016, the odometer showed 3,582 miles.

However, as mentioned above, due to his concerns regarding the potential safety risks associated with the slide-out defect, Laber revoked acceptance of the Miramar in February 2017 after Thor was unable to repair the slide-out defect. Laber then filed this instant action.

**Motion to Preclude**

The motion for summary judgment is premised on the Court granting the motion to preclude. Therefore, the Court addresses this motion first.

Long View moves to preclude the testimony of Laber's disclosed expert, Thomas Bailey ("Bailey"). Bailey offers an opinion regarding (1) the merchantability of the Miramar ("merchantability opinion") and (2) the Miramar's value at the time of sale ("valuation opinion"). Bailey first opines that the Miramar was not merchantable at the time of sale. As to this opinion, Long View argues that Bailey is neither qualified to testify as to the Miramar's merchantability nor is his methodology reliable in finding that the Miramar is unmerchantable. Bailey next opines that the Miramar was worth $64,000 less than Laber paid for it at the time of the sale. As to this opinion, Long View argues that Bailey's methodology is unreliable. For the following reasons, the Court finds that Bailey's valuation opinion must be precluded because it is simply unreliable.[3]

**Discussion**

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

   (b) the testimony is based on sufficient facts or data;

   (c) the testimony is the product of reliable principles and methods; and

   (d) the expert has reliably applied the principles and methods to the facts of the case."

FED. R. EVID. 702.

---

[3] The Court need not determine the admissibility of Bailey's merchantability opinion because the Court ultimately concludes that Laber has not submitted sufficient evidence as to raise a genuine issue of material fact to survive summary judgment on his claim for a breach of the implied warranty of merchantability given the preclusion of Bailey's valuation opinion.

The party offering expert testimony bears the burden of demonstrating the admissibility of the testimony by a preponderance of the evidence. *Lippe v. Bairnco Corp.*, 288 B.R. 678, 685–86 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004). To be admissible, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds*, 552 U.S. 312 (2008).

Indeed, "the Supreme Court has made clear that the district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). "As a threshold matter, trial courts must consider whether the witness is qualified by knowledge, skill, experience, training, or education to render his or her opinions as an expert, before reaching an analysis of the testimony itself." *Vale v. United States of Am.*, 673 F. App'x 114, 116 (2d Cir. 2016) (summary order). Even if the witness is qualified to testify as an expert, "[e]xpert testimony is inadmissible as unreliable where it consists of conclusory and speculative opinions, or where it lacks foundation." *Id.* In determining whether an expert witness' testimony must be excluded as unreliable, the "inquiry is fluid and will necessarily vary from case to case." *Amorgianos*, 303 F.3d at 266. "The Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Id.*

(internal quotation marks and citations omitted). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id*.

In *Smith v. Freightliner, LLC*, plaintiffs sued the defendant-manufacturers of their motor home for, among other claims, breach of warranty due to various alleged defects. 239 F.R.D. 390, 392 (D.N.J. 2006). In conjunction with deciding the defendant's motion for summary judgment, the court excluded plaintiffs' expert's testimony as to the diminution in value of the motor home. *Id*. at 393. Although the court found that the expert was qualified to testify as to the motor home's value, "[the expert's] report and proposed testimony lack[ed] a discernable methodology and, therefore, [was] barred." *Id*. Although the expert identified factors he used to assess the motor home's value and testified that he (1) "test rode the vehicle and felt a vibration," (2) "reviewed the repair history of the vehicle and service complaints made by the plaintiffs," and (3) "determined that a 'stigma' attached to the motor home because it vibrated, and subsequent repairs did not fix the problem," to come to the conclusion that "the vehicle suffered a twenty-five percent loss in value," the court found that the expert could not testify as to the diminution in value of the motor home because "the [c]ourt cannot say that [the expert] did not pull the twenty-five percent reduction out of a hat." *Id*. The court appears to have focused on its assessment that the expert did not follow his own methodology and, therefore, his methodology could not be replicated, which is "[a] basic requirement under *Daubert*." *Id*.

Similarly, in *Castagna v. Newmar Corp.*, the court excluded Bailey's expert opinion regarding the market value of a damaged RV in connection with a breach of warranty lawsuit. No. 3:15-cv-249 (JD), 2020 WL 525936, at *1 (N.D. Ind. Feb. 3, 2020). With respect to Bailey's market value opinion, the court noted that Bailey offered extensive background regarding

5

appraisals in general, summarized the RV's condition, listed sixteen factors that could affect the value of an RV, opined that the RV could only be sold for salvage value, and then concluded that the RV's market value at the date of its sale would have been $25,000. *Id.* at *3. The court found that "[d]espite Mr. Bailey's invocations of his experience and his passing reference to various factors that he considered, the Court cannot ascertain how he arrived at a figure of $25,000. The report offers little explanation for how Mr. Bailey evaluated the factors he listed, and does not even mention many of them. Indeed, the report provides little more than a black box cloaked in references to experience, before announcing the market value, as if out of the blue." *Id.* Accordingly, the court precluded Bailey's market value opinion because the plaintiff failed to show that Bailey "reliably applied a reliable methodology." *Id.* at *4.

In this case, Bailey was retained as Laber's expert to give testimony regarding the Miramar's merchantability and its valuation. According to his reports, Bailey has been involved in the business side of the motor home industry since 1964 in various ways (1) daily retail and wholesale sales, (2) customer service, (3) retail and wholesale parts, (4) finance, (5) insurance, (6) owner, president and corporate advisor to multiple family owned Recreational Vehicle/Motorcycle/Marine dealerships located in Michigan and Florida. Bailey also notes that he is a "Certified Appraiser specializing in Recreational Vehicles" and that "[h]e has conducted over 2,000 specialized RV & Bus appraisals, 1,200 RV & Bus estimates, 2,200 RV Origin & Cause Investigations . . . ." Valuation Report, ECF No. 108-4 at p. 38.

With respect to his valuation opinion, Bailey's methodology appears to draw heavily on his experience in the motor home industry. The report reads like a tutorial on RV appraisals first identifying a "partial list" of "forces that can affect value," which "can be of an unforeseen and complex nature." *Id.* at p. 15. Bailey notes that each of the forces, "and others, has to be considered,

either directly or indirectly, in estimating cost, price, or the repair of the Recreational Vehicle. These forces are used to create the basic format for making an appraisal." *Id*. Next, Bailey discusses diminution of value and hypothetical circumstances under which "a vehicle might sustain diminished value," including "the claim," "the repair," and the "inherent value." *Id*. at p. 18–20. As part of this analysis, Bailey considered a potential buyer's "inherent feeling," which is a measure of what a buyer would pay for the RV with full disclosure of its problems. *Id*. at p. 34. Lastly, Bailey provides another list of twenty-one non-exclusive factors that are "followed in conducting a valuation determination," and notes that "[t]he weight that is given to each of the factors above is based upon [Bailey's] 42 years of experience." *Id*. at p. 33. After explaining the process for conducting the appraisal and the facts to be considered, Bailey opines that the Miramar's value was $64,000 less than was paid at the time of sale. *Id*. at p. 35.

Bailey's opinion that the Miramar's value diminished by $64,000 must be precluded. The report states that "[a]n appraisal pure and simple is an estimate, an opinion founded on the appraiser's education, knowledge and experience and may be impacted by other factors stated in this report. The degree of accuracy depends solely on the competence and integrity of the appraiser, **along with the accuracy of data available**. The opinion or appraisal can be transmitted orally or in writing. In most cases the appraisals are written, and state the estimated value **based upon available data and supported by analysis of current data**." *Id*. at p. 16 (emphasis added).

Notwithstanding Bailey's own definition of his role as an appraiser, it does not appear to this Court that Bailey's opinion derives from any analysis of any data whatsoever. His actual methodology remains cloaked in mystery and the basis upon which he finds a diminution in value of $64,000 cannot be discerned. A jury would be left with no ability to assess, accept, reject or otherwise consider the import of this opinion, rendering it, decidedly unhelpful. This is precisely

the danger which gave rise to the Court's gatekeeping function in the first place. *See Daubert*, 509 U.S. at 592, 597 ("this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline"; Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.").

First, with respect to the 15 "forces" that impact value, Bailey's report does not contain any analysis as to whether and to what extent each "force" impacted value in this appraisal. Indeed, at his deposition he admitted that nine of the fifteen were irrelevant to the appraisal in this case. And with respect to the others which were deemed relevant, Bailey provides no analysis as to how they impacted his valuation or the weight given to them in that valuation. Nor did Bailey assess those factors with "available data." For example, he testified that the geographic region in which the sale occurred can impact value. But he made no effort to contact dealers in the northeast to discuss sales, marketing, price points or the like. Rather, noting that this RV was sold in the northeast, Bailey only considered his belief that RVs are difficult to sell in the northeast during the winter. Bailey Dep. at 122:8–25–123:1–24, ECF No. 108-5 at p. 33–34. He further testified that he knows this because he operated two RV dealerships, one in Michigan and one in Florida, until 1986. But accepting as accurate his assessment, he does not explain how this knowledge impacted or translated into his valuation of the Miramar.

Bailey acknowledges in his report that the use of "Appraisal Books" is an appropriate part of an appraisal methodology. He cites specifically to the NADA ("National Automobile Dealer Association") guides as the "generally accepted industry standard for value." Valuation Report, ECF No. 108-4 at p. 16. Bailey cautions however, that it is only a guide because it does not take

into account such things as geographical price differences. Notwithstanding, Bailey did not use any data or values from the NADA guides in reaching his illusory conclusion.[4] In fact, at his deposition, he admitted that he had not used any data points from RV Trader or Kelley Blue Book either.

When questioned about another factor, "current market supply and demand," Bailey testified that he did not consider any specific data, but that he heard about the "stock supply" from different manufacturers and dealers. Bailey Dep. at 121:2–25–122:1–7, ECF No. 108-5 at p. 32–33. Nor did Bailey consult with any dealers regarding valuation or insurance carriers regarding insurability of the Miramar.

Bailey's deposition testimony also reveals that his "inherent feeling" valuation does not withstand scrutiny under *Daubert*. Bailey could not identify any examples of research regarding this methodology or whether this methodology had been peer reviewed. He testified that he learned of this method by doing "research on the internet" many years ago, but he could not recall the specifics of the research or the source of the information gleaned therefrom.

Finally, Bailey testified that he calculated the error rate for his appraisal methodology more than thirty years ago and the calculation was largely anecdotal. Bailey testified that he determined his valuation of a vehicle was wrong when, following his purchase of the vehicle, he was unable to sell it for more than he had paid. He believes he was wrong about 5% of the time based upon this experience from 30 plus years ago.

As in *Smith,* in many respects, Bailey did not follow the methodology described in his own report. And to the extent he did, for example by employing the "inherent feeling" valuation, such

---

[4] When pressed, Bailey acknowledged consulting NADA guides, but did not write down and does not recall any values he saw therein because they "were not of any use to [him]." Bailey Dep. at 139:6–13, ECF No. 108-5 at p. 47.

a methodology is ill-explained, unsupported by peer review, without foundation in the industry and appears little more than a "gut feeling" deriving from years in the RV industry.

Lastly, Bailey failed to adequately explain how his methodology, even if followed, led to his ultimate opinion that the Miramar was worth $64,000 less than was paid for it at the time of sale. While Bailey testified at his deposition that he attributed $32,000 to prior repair attempts, that conclusion appears nowhere in his report and he did not offer any analysis or calculations to explain that number in his valuation report. Instead, Bailey appears to insist that the Court (or a jury) accept his valuation based on his experience alone. But, as in *Castagna*, Laber "relies far too heavily on the argument that Mr. Bailey's opinion is the product of his experience instead of an objective science . . . . Mr. Bailey's report strikes the [c]ourt as offering little more than background and hand-waiving before announcing a bottom line untethered to any particular analysis." 2020 WL 525936, at *3. Having reviewed Mr. Bailey's report, and having considered his testimony, this Court is left with an essentially identical impression.

The motion to preclude is GRANTED in part. The valuation opinion is precluded.

**Motion for Summary Judgment**

Long View moves for summary judgment as to Laber's claims for breach of the implied warranty of merchantability and revocation (Count One), breach of express warranty (Count Three), and negligent misrepresentation (Count Seven).[5]

### Standard of Review

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine

---

[5] Laber does not oppose Long View's motion for summary judgment on the express warranty claim (Count Three) and negligent misrepresentation claim (Count Seven) and has abandoned those claims.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Id*.; *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

***Breach of the Implied Warranty of Merchantability (Count One)***

In an action brought under the Magnuson-Moss Warranty Act ("MMWA"), the MMWA "simply adopts the default state law rule for implied warranty actions and does not broaden the basis for an implied warranty action beyond that allowed by state law." *Dubois v. Maritimo Offshore Pty Ltd.*, No. 3:15-CV-01114 (JAM), 2019 WL 4723140, at *8 (D. Conn. Sept. 26, 2019) (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 248–49 (2d Cir. 1986)). Accordingly, Laber's implied warranty of merchantability claim must be evaluated under Connecticut law. *See* CONN. GEN. STAT. § 42a-2-314. In Connecticut, to recover for a breach of the implied warranty of merchantability, "a plaintiff must prove (1) that a merchant sold goods, (2) which were not merchantable at the time of sale, and (3) **injury and damages to the plaintiff or his property** (4) were caused approximately and in fact by the defective nature of the goods, and (5) that notice was given to the seller of injury." *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 187 (D. Conn. 1984) (emphasis added) (brackets, internal quotation marks, and internal

citations omitted) (citing J. White, R. Summers, *Uniform Commercial Code* (2d Ed.1980), at 343); *see also Exp. Dev. Canada v. T. Keefe & Son, LLC*, 2016 WL 8488125, at *24 (Conn. Super. Ct. Nov. 9, 2016) (same). Significantly, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." CONN. GEN. STAT. § 42a-2-714(2).

Here, Long View is entitled to summary judgment because Laber presents no evidence of damages other than Bailey's valuation opinion, which the Court has precluded. Although Laber believes that the Miramar was of lesser value at the time of sale because of the slide-out defect, this lay opinion does not provide any basis upon which a jury could assess or award damages. Indeed, the value of the Miramar at the time of the sale, given the slide-out defect, is not something that is within the ken of the average juror. *See Bourke v. MAN Engines & Components, Inc.*, 303 F. Supp. 3d 227, 234 (D. Conn. 2018) (noting that expert testimony is required when an issue "present[s] 'complex questions outside of the ordinary knowledge and experience of jurors'") (quoting *White v. Mazda Motor of Am., Inc.*, 54 A.3d 643, 650 (2012), *aff'd*, 99 A.3d 1079 (2014)); *see*, *e.g.*, *Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Techs. Worldwide, Inc.*, No. 13 CIV. 3860, 2013 WL 4931649, at *5 (S.D.N.Y. Sept. 12, 2013) (noting that expert testimony was required to resolve an issue of economic valuation in the context of stock purchase agreements). Expert testimony is therefore necessary, in this case, to establish the damages element of the breach of the implied warranty of merchantability claim. Absent same, the claim fails and Long View is entitled to summary judgment. *See Lippe v. Bairnco Corp.*, 99 Fed. App'x 274, 282 (2d Cir. 2004) (summary order) (affirming summary judgment following the proper exclusion of plaintiff's valuation expert where expert testimony on valuation of assets was necessary to plaintiff's claim);

*Buckley v. Deloitte & Touche USA LLP*, 541 F. App'x 62, 64 (2d Cir. 2013) (summary order) (affirming summary judgment finding there to be insufficient evidence to support an essential element of plaintiff's breach of contract claim due to the proper exclusion of expert testimony); *Sanders v. Fireline, Inc.*, 295 F. App'x 373, 374–75 (2d Cir. 2008) (summary order) (affirming summary judgment on the basis of the proper exclusion of plaintiff's expert testimony, which was necessary to establish plaintiff's personal injury claim); *Bambarger v. Ameristep, Inc.*, 2013 WL 6222540, at *2 (W.D. Va. 2013) (granting summary judgment where expert testimony necessary to sustaining the plaintiff's claim was precluded).

### *Revocation (Count One)*

In response to the motion for summary judgment, Laber asserts that even if the claim for a breach of the implied warranty of merchantability in Count One fails, Count One also includes a separate cause of action for revocation of the contract. Long View responds that "Laber cannot use an unpled revocation claim to prolong this action." ECF No. 118 at p. 14. At oral argument, Laber requested the opportunity to amend his complaint, if the Court disagreed with his argument that such a claim was adequately pled in the complaint.

Under Connecticut law, revocation is a cause of action distinct from a breach of warranty claim. *See* CONN. GEN. STAT. § 42a-2-608 (in relevant part, "[t]he buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him . . . ."); *see also Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d 144, 148 (1976) ("a buyer's revocation of acceptance is a distinct course of action [it is not] an alternative remedy for breach of warranty.") (internal citations omitted).

Under Connecticut law, a "buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him . . . ." CONN. GEN. STAT. § 42a-2-608(1) (hereinafter, "revocation claim"). The elements of a revocation claim are:

> (1) a nonconformity which substantially impairs the value to the buyer; (2) acceptance (a) with discovery of the defect, if the acceptance is on the reasonable assumption that the nonconformity will be cured, or (b) without discovery of the defect, when the acceptance is reasonably induced by the difficulty of the discovery or the seller's assurances; (3) revocation within a reasonable time after a nonconformity was discovered or should have been discovered; and (4) revocation before a substantive change occurs in the condition of the goods not caused by their own defects.

*Conte*, 374 A.2d at 148 (citing CONN. GEN. STAT. § 42a-2-608).

Turning to the Complaint, Laber alleges that "Plaintiff inspected the RV at Long View on or about February 20, 2017 and observed that the slide-out system was still defective and it had not been repaired, and he refused to retake possession." ECF No. 1 ¶ 20. Laber also asserts that "[o]n February 23, 2017, Plaintiff, through his attorney, served written notice on the defendants that Plaintiff revoked acceptance of the RV." *Id.* ¶ 21. Count One is captioned "Breach of Implied Warranty of Merchantability, Revocation of Acceptance, and Magnuson-Moss Warranty Act (Long View and Ally Bank Only)." *Id.* at p. 4.

The substantive allegations of Count One are as follows:

> 24. This Count is asserted under Magnuson-Moss for Long View's breach of the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314.
>
> 25. A warranty that the RV was in merchantable condition was implied by the contract by operation of Conn. Gen. Stat. § 42a-2-314.
>
> 26. The RV, as sold to Plaintiff, was not in merchantable condition.
>
> 27. Plaintiff provided Long View with a reasonable opportunity to cure the breach of implied warranty but it has not done so.
>
> 28. Plaintiff is entitled to revoke acceptance of the RV.

15

*Id*. at p. 4–5. Finally, in the Complaint's prayer for relief, Laber seeks "actual damages, consequential damages, punitive damages, and attorney's fees and costs, and **an order that the retail installment contract was validly and effectively revoked** and that no sums are due to Ally Bank . . . ." *Id*. at p. 10. (emphasis added).

Laber does not cite to CONN. GEN. STAT. § 42a-2-608 and, in fact, he specifically asserts that the Count is asserted under CONN. GEN. STAT. § 42a-2-314, governing the implied warranty of merchantability. And in both paragraph 28 and the prayer for relief, revocation is asserted only as the remedy being sought as a result of the breach of warranty. But, as noted above, revocation is not a remedy available for such actions. *Conte*, 374 A.2d at 148.

Nor do the allegations in the complaint plausibly allege a distinct claim for revocation. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In the first instance, the Court notes that although not always mandated, FED. R. CIV. P. 10(b) generally requires that distinct claims be pleaded in separate counts. FED. R. CIV. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."); *see Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943). However, where claims are founded upon separate transactions or occurrences, separation into distinct counts is generally required. *Bautista v. Los Angeles County*, 216 F.3d 837, 840–41 (9th Cir. 2000); *see also* JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 10.03[2][a] (3d ed. 1997) ("Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims."). Although the breach of warranty and revocation claims arise out of the same sales transaction, the operative facts of each claim are distinct, requiring different proof and implicating different defenses. As such, a revocation claim

16

should have been separately pled. *See*, *e.g.*, *Sec. & Exch. Comm'n v. Hamilton*, No. 3:16-CV-192(AWT), 2017 WL 5252480, at *1 (D. Conn. Feb. 1, 2017) (granting motion to separate statement of claims under Rule 10(b), in part, because "each claim of insider trading will involve a factually distinct defense . . ."); *Marianao Sugar Trading Corp v. Pennsylvania R Co*, 11 F.R.D. 288, 290 (S.D.N.Y. 1951) (finding that claims based on separate shipments should be separately stated and numbered in the complaint because the cause of damage and defenses may vary with respect to each shipment).

Moreover, Laber does not allege the statutory elements of a revocation claim. By way of example only, he does not allege that the nonconformity "substantially impairs the value" of the Miramar to Laber, that his acceptance of the Miramar was "reasonably induced by the difficulty of the discovery or the seller's assurances"; or that the revocation occurred "before a substantive change occur[ed]" in the condition of the Miramar. *Conte*, 374 A.2d at 148 (citing CONN. GEN. STAT. § 42a-2-608). Indeed, other than the label afforded Count One and his invocation of the phrase "revocation" or "revoked" at various locations in the Complaint, there is no indication that Laber intended to assert a separate cause of action for revocation pursuant to CONN. GEN. STAT. § 42a-2-608.

Because the Complaint appears to invoke revocation of the contract only as a remedy, does not include a separate count seeking revocation, does not cite CONN. GEN. STAT. § 42a-2-608 at all, and does not contain the factual allegations necessary to plausibly allege a claim for revocation under CONN. GEN. STAT. § 42a-2-608, the Court concludes that no revocation claim is pled in the Complaint.

Nor does the Court find that permitting amendment, at this late juncture, is appropriate.

A plaintiff may amend his complaint once as a matter of right within twenty-one days after service of the complaint or, if a responsive pleading is required, within twenty-one days after service of the responsive pleading. FED. R. CIV. P. 15(a); *Blaine v. UConn Health Care*, No. 3:18-cv-00359 (MPS), 2018 WL 3448165, at *1 (D. Conn. July 17, 2018). In all other cases, the plaintiff may amend his complaint only with the Court's leave. FED. R. CIV. P. 15(a)(2). Generally, leave to amend should be "freely give[n]." FED. R. CIV. P. 15(a)(2); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court has discretion to deny leave to amend because of "undue prejudice to the opposing party by virtue of allowance of the amendment . . . ." *Foman*, 371 U.S. at 182. "In determining what constitutes prejudice, we generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted). Importantly, though, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). For example, in *Fluor Corp.*, the Second Circuit found that the district court abused its discretion in denying plaintiffs' request for leave to amend when the defendants had not filed a motion for summary judgment and it appeared that the amendment would not involve a great deal of discovery. *Id*. In contrast, in *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, the Second Circuit found that the district court did not abuse its discretion when it denied plaintiff's motion to amend because, among other reasons, "permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been

completed and [Defendant] had already filed a motion for summary judgment." 760 F.2d 442, 446 (2d Cir. 1985).

This case has been pending since April 2017. The parties have engaged in extensive motion practice and there have been multiple discovery disputes requiring the Court's attention. Discovery was completed in late 2018 and all of the issues remaining in the case have been fully briefed in the summary judgment motion and now adjudicated as well. To permit an amendment to the Complaint to allow a new cause of action would essentially re-start the pleading process, to include motion practice addressed to the Amended Complaint. A new cause of action also presents the very real potential for the need to re-open discovery, to include written discovery or depositions, depending of course on the allegations in the Amended Complaint. The undue prejudice to Long View is manifest. *See Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (finding it "entirely reasonable for the district court to deny a request to amend a complaint that was filed two and one-half years after the commencement of the action, and three months prior to trial"); *c.f. Mercer v. Schriro*, No. 3:16-CV-329 (CSH), 2019 WL 4017309, at *6 (D. Conn. Aug. 26, 2019) (finding no undue delay or undue prejudice when discovery was ongoing and the proposed amendment included no new legal claim).

For all of these reasons, the oral motion to amend the complaint is denied.

**Conclusion**

For the foregoing reasons, Defendant's Motion to Preclude Plaintiff's Expert is GRANTED in part and Defendant's Motion for Summary Judgment is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of April 2020.

                                          */s/ Kari A. Dooley*
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE